

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00577-CV

**IN THE INTEREST OF L.S.D.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA01575
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: January 23, 2019

AFFIRMED

Mom appeals the trial court's order terminating her parental rights to her child L.S.D.[i]

Mom asserts the trial court could not have found by clear and convincing evidence that terminating

her parental rights is in the child's best interest.  We affirm the trial court's order.

## BACKGROUND

L.S.D. was removed from her home when she was five months old.[ii]  The Department

petitioned for conservatorship, and the trial court appointed the Department as L.S.D.'s temporary

managing conservator and placed Mom on a service plan.  Mom did not complete her service plan.

---

[i] To protect the minors' identities, we refer to Mom and the children using aliases.  *See* TEX. R. APP. P. 9.8.
[ii] Because Mom is the only appellant, we recite only those facts that pertain to Mom or her children L.S.D. and S.E.D.
L.S.D is the only child subject of this appeal, but Mom's interactions with S.E.D. were also discussed during the trial.

Citing Mom's course of conduct meeting ground (O) and the best interest of the child, the trial court terminated Mom's parental rights to L.S.D. Mom appeals.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

## BASES FOR TERMINATING MOM'S PARENTAL RIGHTS

### A. Mom's Course of Parental Conduct

The trial court found Mom's course of conduct met the statutory ground described in subparagraph (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). On appeal, Mom does not challenge the trial court's statutory ground finding.

### B. Best Interest of the Child

Instead, Mom challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that terminating her parental rights is in L.S.D.'s best interest. *See id.* § 161.001(b)(2). The Family Code statutory factors[5] and the *Holley* factors[6] for the best interest of a child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to L.S.D.'s best interest.

### C. Witnesses at Trial

In a one-day bench trial, the trial court heard testimony from the Department case worker, the foster mother, and Mom. The trial court also received recommendations from the child's attorney ad litem and the CASA volunteer. The trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *cf. In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

**D.     Child Removed, Service Plan Initiated**

L.S.D. was removed from her home because Mom had an open DFPS legal case involving sexual abuse by someone living in the home and Mom had unaddressed mental health issues. The case worker initiated a service plan for Mom. Mom was ordered to refrain from illegal drug use, maintain child-safe housing, complete individual therapy sessions by a Department-approved counselor, undergo a psychological evaluation, and follow all its written recommendations.

**E.     Mom's Plan Compliance**

On one of the case worker's visits, the worker smelled a strong odor of marijuana and saw Mom's paramour—who had a warrant out for his arrest—in the home. Mom and her paramour have a history of domestic violence, and the worker believes Mom's paramour is still living in Mom's home. The case worker testified Mom has not maintained child-safe housing, completed her therapy sessions, or complied with the evaluation recommendations. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (7), (8), (10); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D), (H)).

Mom testified that from August 2017 to July 2018 she lived in five residences: a shelter, a motel, her parents' home, a trailer, and finally an apartment. She insists she has separated from her paramour, he does not live with her, she is meeting with her psychiatrist every week, and she is following all her psychiatrist's recommendations. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (7), (8), (10); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

**F.     Mom's Care for L.S.D., S.E.D.**

Mom visits L.S.D. every week, and the case worker agreed that Mom's visits with L.S.D. are appropriate. But the foster mother expressed concern for how Mom would treat L.S.D. if Mom regained conservatorship because of how Mom treats S.E.D. S.E.D. is one of Mom's daughters, and during Mom's supervised visits with L.S.D., Mom only sometimes asks about S.E.D. Though

Mom has the right to do so, Mom has never visited S.E.D. Mom has never asked the foster mother to visit S.E.D. or even texted her to try to set up a visit. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (D), (H), (I)).

## G.      Options, Recommendations

L.S.D. was placed with the foster family when she was about five months old. At the time of trial, L.S.D. was about seventeen months old. She is bonded to her foster parents. The foster parents are meeting L.S.D.'s and her sister's needs.[iii] The foster parents love the girls, the girls are doing well under the foster parents' care, and the foster parents want to adopt L.S.D. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

The Department case worker, L.S.D.'s ad litem, and the CASA volunteer all recommended that Mom's parental rights to L.S.D. be terminated.

Considering all the evidence under the two evidentiary standards, we conclude the trial court could have formed a firm belief or conviction that terminating Mom's parental rights to L.S.D. was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

### CONCLUSION

Because the evidence was legally and factually sufficient to support the trial court's findings by clear and convincing evidence (1) of at least one predicate ground for termination and (2) that termination of Mom's parental rights is in the best interest of the child, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[iii] S.E.D. is L.S.D.'s older sister. S.E.D. is living with the foster parents, but Mom still has possessory conservatorship of S.E.D.

¹ <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *D.M.*, 452 S.W.3d at 472.

² <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met the following criteria or ground:

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

³ <u>Legal Sufficiency</u>. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

⁴ <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord H.R.M.*, 209 S.W.3d at 108.

⁵ <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

> (1) the child's age and physical and mental vulnerabilities;
> (2) the frequency and nature of out-of-home placements;
> (3) the magnitude, frequency, and circumstances of the harm to the child;
> (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
> (5) whether the child is fearful of living in or returning to the child's home;
> (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
> (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
> (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
> (9) whether the perpetrator of the harm to the child is identified;
> (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
> (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
> (12) whether the child's family demonstrates adequate parenting skills; . . . and
> (13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see* [citations to cases in COA jurisdiction].

---

[6] *Holley* Factors.  The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

    (A)  the desires of the child;
    (B)  the emotional and physical needs of the child now and in the future;
    (C)  the emotional and physical danger to the child now and in the future;
    (D)  the parental abilities of the individuals seeking custody;
    (E)  the programs available to assist these individuals to promote the best interest of the child;
    (F)  the plans for the child by these individuals or by the agency seeking custody;
    (G)  the stability of the home or proposed placement;
    (H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
    (I)  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).